## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MICHAEL BALL**                                                    **CIVIL ACTION**

**versus**                                                              **NO. 14-1091**

**ROBERT TANNER, WARDEN**                        **SECTION: "A" (1)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Michael Ball, is a state prisoner incarcerated at the B.B. "Sixty" Rayburn Correctional Center, Angie, Louisiana.  On September 8, 2011, he was convicted of first degree

robbery under Louisiana law.[1]  On March 8, 2012, he pleaded guilty to being a second offender and

was sentenced as such to a term of forty years imprisonment without benefit of probation or

suspension of sentence.[2]  On April 24, 2013, the Louisiana Fifth Circuit Court of Appeal affirmed

his conviction and sentence.[3]  The Louisiana Supreme Court then denied his related writ application

on November 8, 2013.[4]

On or about May 10, 2014, petitioner filed the instant federal *habeas corpus*

application.[5]  The state concedes that the application is timely filed and that petitioner exhausted his

remedies in the state courts.[6]

I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.

Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of

fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal

---

[1] State Rec., Vol. III of IV, transcript of September 8, 2011, p. 39; State Rec., Vol. II of IV, minute entry dated September 8, 2011; State Rec., Vol. II of IV, jury verdict form.

[2] State Rec., Vol. III of IV, transcript of March 8, 2012; State Rec., Vol. II of IV, minute entry dated March 8, 2012; State Rec., Vol. II of IV, plea form.

[3] State v. Ball, 131 So.3d 896 (La. App. 5th Cir. 2013) (No. 12-KA-710); State Rec., Vol. IV of IV.

[4] State *ex rel.* Ball v. State, 125 So.3d 450 (La. 2013) (No. 2013-KH-1329); State Rec., Vol. IV of IV.

[5] Rec. Doc. 1.

[6] Rec. Doc. 10, p. 11.

- 2 -

habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the

> state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held:  "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case."  White v. Woodall, 134 S. Ct. 1697, 1706 (2014).  However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.  Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision.  AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011)

("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of

the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

        While the AEDPA standards of review are strict and narrow, they are purposely so.

As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary
> conclusion was unreasonable.
>
>     If this standard is difficult to meet, that is because it was
> meant to be.  As amended by AEDPA, § 2254(d) stops short of
> imposing a complete bar on federal court relitigation of claims
> already rejected in state proceedings.  It preserves authority to issue
> the writ in cases where there is *no possibility* fairminded jurists could
> disagree that the state court's decision conflicts with this Court's
> precedents.  It goes no farther.  Section 2254(d) reflects the view that
> habeas corpus is a guard against *extreme malfunctions* in the state
> criminal justice systems, *not a substitute for ordinary error*
> *correction through appeal.  As a condition for obtaining habeas*
> *corpus from a federal court, a state prisoner must show that the state*
> *court's ruling on the claim being presented in federal court was so*
> *lacking in justification that there was an error well understood and*
> *comprehended in existing law beyond any possibility for fairminded*
> *disagreement.*

Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from

using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state

courts.").

        The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law

and apply the strictly deferential standards of review mandated therein.  White v. Woodall, 134 S.

Ct. 1697, 1701 (2014).

## II.  Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts

of this case as follows:

Sergeant Charles Errico of the Harahan Police Department was working the night shift on January 7, 2011, when he responded to a Jefferson Parish Sheriff's Office call at about 2:00 a.m. about a subject in a white Chevy pickup truck stealing wooden pallets at Quikrete of New Orleans in Harahan, Louisiana.  Sergeant Errico was behind Harahan lockup when he got the call, so he proceeded to the Quikrete location to assist Jefferson Parish deputies.  Sergeant Errico was headed east on Jefferson Highway at the intersection with Hord Street when he saw a white pickup truck, matching the vehicle description given, turn right from Hord Street onto Jefferson Highway.  Sergeant Errico turned and followed behind the truck as it turned onto Hickory Avenue.  As the truck began to travel at a high rate of speed, Sergeant Errico put on his lights and siren and gave chase until the truck turned left into a parking lot at the end of Hickory Avenue and came to a stop.  The driver jumped out of the truck and fled on foot.  Jefferson Parish Sheriff's deputies arrived and one deputy pursued the suspect on foot.

Sergeant Errico had indicated via radio that a vehicle matching the description of the suspect's was at Jefferson Highway and Hord Street.  Jefferson Parish Sheriff's Office Deputy Micah Blange responded to the call and advised that he was en route.  Upon approaching the intersection of Second Street and Hickory Avenue, he observed a white pickup truck traveling at a high rate of speed followed by Sergeant Errico.  Deputy Blange joined the chase until the vehicle made an abrupt turn into a parking lot at the end of Hickory Avenue.  The suspect got out of the truck and fled on foot.  Deputy Blange exited his vehicle and chased the suspect, giving loud verbal commands to stop.

Deputy Blange was within ten feet of the suspect when he saw something black in the suspect's hand.  The deputy pulled his pistol and pointed it at the suspect, ordering him to stop and put his hands in the air.  The suspect turned and faced him, enabling Deputy Blange to see that the suspect actually had a blue bag in his hand.  Deputy Blange holstered his pistol and drew his taser, telling the suspect to stop.  When Deputy Blange holstered his gun, the suspect took off again.

- 6 -

Deputy Daniel Lincoln of the Jefferson Parish Sheriff's Office approached from the other side and deployed his taser, causing the suspect to fall.  The suspect continued to try to get up.  Another deputy arrived and together, they rolled him onto his stomach, and handcuffed him.  Deputy Blange read the suspect his rights, which the suspect indicated he understood.  Deputy Blange asked the suspect "what are you on?," and the suspect responded saying "the stupid things that drugs make you do."  Several moments later, Deputy Blange was advised via radio that an armed robbery had occurred at Mr. Binky's, with the vehicle involved matching the description of the suspect's vehicle and the perpetrator's clothing matching those of the suspect.  Two witnesses were brought to the scene and both identified the suspect as the perpetrator of the armed robbery.

Deputy Blange returned to the white truck and conducted a search of the vehicle.  He found a red bandana on the driver's side floor board and a pair of black sunglasses on the passenger side floorboard.  After the suspect was apprehended, it was discovered he was in possession of a blue Capital One Bank money bag.  The money bag contained approximately $210 cash.  At trial, Deputy Blange identified the defendant in court as the person that he chased both in the truck and on foot, and ultimately apprehended.

Michael Doherty testified that he was at Mr. Binky's in the early morning hours of January 7, 2011, between 12:00 a.m. and 2:00 a.m.  Mr. Doherty testified that he went to Mr. Binky's, talked to the clerk, Jennifer Rohrbacker, and then both went outside for a cigarette.  While outside the store, a man approached them and told him to get on the ground.  The man ran inside the store and asked for money.  He came back out a minute later.  Mr. Doherty testified that he and the clerk were directly outside the door and were only there a couple of minutes before the man approached them.

Mr. Doherty testified that the man was running when he approached them and was wearing a jumpsuit and hoodie, with his face covered from the nose down with a red bandana and sunglasses.  The man's hand was also covered with a bandana, which was either orange or red.  Mr. Doherty testified that he was unsure of what the man had in his hand.  He described the man as a white male and further described the jumpsuit as gray or green, with no sleeves, like a mechanics jumpsuit, with a white or gray hoodie underneath.  After Mr. Doherty got onto the ground in a squatting position, the man demanded money and asked the clerk, "Where do I go?" and then ran inside.  The clerk followed him into the store.  The man came out of

the store and told them to stay on the ground before running back in the direction he came from. Mr. Doherty testified that he heard footsteps and eventually heard a car door shut, the vehicle start and speed off. Mr. Doherty testified that he was able to see a white vehicle that was either a car or a low lying truck. Mr. Doherty testified that the clerk called 911. The police later took Mr. Doherty to the suspect, who he positively identified based on the clothing he was wearing.

Jennifer Rohrbacker was the sole clerk on duty at Mr. Binky's Adult Superstore at the time of the robbery. Around 2:00 a.m., she was assisting a customer and spoke with that customer for about 30 minutes. She testified that upon completing a transaction with the customer, they both went outside to smoke a cigarette, leaving no one else inside the store. Ms. Rohrbacker testified that she is allowed to smoke only when no one is in the store. She and the customer were outside "chitchatting" and having a cigarette when she heard footsteps running and getting closer. She then saw a man running towards her. Ms. Rohrbacker described the man as tall, wearing a light green or gray jumpsuit. He was holding something towards her face and she thought it was a gun. The man had his face covered with a handkerchief and he said something about wanting money. She allowed him into the store because she was scared and did not know what else to do.

Ms. Rohrbacker testified that she turned around and watched him walk behind the counter and told him where the money was. She testified that he was not asking where the money was, but she told him because she was scared and wanted him to leave. The man grabbed an old Capital One money bag from behind the counter and left. Ms. Rohrbacker testified there was $210 in the bag. She explained that the store keeps spare change in the bag for customers who need it for the drink machine or back booth area. After the man left, she called 911 and the police arrived within minutes.

Ms. Rohrbacker was taken with the customer to an area nearby, where she identified the man who robbed her. She returned to Mr. Binky's and was shown a wallet containing the driver's license of the suspect. She recognized his face as a regular customer of the store who she saw once every couple of months. Ms. Rohrbacker testified that the man would browse sale movies in the section right across from the counter, ask for change, then go to the back of the store. She would make change out of the cash bag. Ms. Rohrbacker also testified that the store had video surveillance inside and outside.

Ms. Rohrbacker identified the defendant in court as the man who robbed her. She testified that defendant had not been at Mr. Binky's earlier that night, that she did not have a conversation with him, and that they did not "hatch up" a plan to have him come in and take the money. She testified that she thought he might shoot and kill her, but admitted that she went back in the store towards him and held the door for him when he left the store. Ms. Rohrbacker testified that she kept her eyes on the robber and watched his every move the whole time in case she was asked questions.[7]

### III. Petitioner's Claim

As his sole claim for relief, petitioner argues that his right to present a defense was violated by the trial court's refusal to include a jury charge on the law of "conspiracy." On direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected that claim, holding:

> Both the Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee a criminal defendant the right to present a defense. State v. Decay, 07-966 (La.App. 5 Cir. 6/19/08), 989 So.2d 132, 144, writ denied, 08-1634 (La. 4/13/09), 5 So.3d 161.
>
> Moreover, La.C.Cr.P. art. 802 mandates that the trial court instruct the jury on the law applicable to each case. State v. Batiste, 06-824, p. 14 (La.App. 5 Cir. 3/13/07), 956 So.2d 626, 636, writ denied, 07-0892 (La.1/25/08), 973 So.2d 751. The trial court is required to charge the jury on the law applicable to any theory of defense, when properly requested, which the jurors could reasonably infer from the evidence. Id. Under La C.Cr.P. art. 807, a requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly pertinent and correct. Id. The evidence presented at trial must support the requested special charge. Id. Failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory

---

[7] State v. Ball, 131 So.3d 896, 898-900 (La. App. 5th Cir. 2013) (No. 12-KA-710); State Rec., Vol. IV of IV.

right.  State v. Lawson, 08-123, p. 15 (La.App. 5 Cir. 11/12/08), 1 So.3d 516, 527.

Prior to closing arguments, the defense attorney orally requested, off the record, a jury charge as it relates to conspiracy.  It is preliminarily noted that defendant did not present a written request for a special jury charge, nor did he serve the State with a copy of such proposed instruction, as required by the first paragraph of La.C.Cr.P. art. 807.[FN1]  The trial transcript reflects that the trial judge and both counsel for the State and defendant participated in a "charge conference" off the record, after which defense counsel, on the record, requested a jury charge related to conspiracy, but added that the trial court had already indicated it would not include the charge.  Defense counsel objected for the record and the trial court noted the objection.  As defense counsel's request was not made in writing as required by Article 807, the trial court was not required to grant the defendant's requested instruction.  State v. Netter, 11-202, 11-203 (La.App. 5 Cir. 11/29/11), 79 So.3d 478, 483; State v. Lawson, 08-123 (La.App. 5 Cir. 11/12/08), 1 So.3d 516, 527.

[FN1] La.C.Cr.P. art. 807 provides:

> The state and the defendant shall have the right before argument to submit to the court special written charges for the jury.  Such charges may be received by the court in its discretion after argument has begun.  The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.

Moreover, even assuming that defense counsel had properly requested the special jury instruction in writing, the record reflects that the trial court properly denied the request for a conspiracy instruction.  Defendant relies on Ms. Rohrbacker's testimony that she told him where the money was located and opened the door to allow the intruder to exit the store, rather than running away from the business, as evidence of his and her plan to rob the store.  Thus, defendant argues that "some" evidence existed to support an instruction of the law of criminal conspiracy.  La.C.Cr.P. art. 802 requires the trial court to charge the jury as to the law applicable to the case.  This provision

has been interpreted to include any instruction as to the law applicable to any theory of defense which a jury could reasonably infer from the evidence.  State v. Mead, 377 So.2d 79 (La. 1979), citing State v. Marse, 365 So.2d 1319 (La. 1978).  A defense of conspiracy based upon the above testimony alone, without more, cannot be reasonably inferred from the evidence.  Ms. Rohrbacker explained her actions, testifying that she only told defendant where the money was located because she was scared and wanted him to leave.  Ms. Rohrbacker stated that she knew defendant as a customer at Mr. Binky's, but that he was not at the store on the day of the robbery.  She further maintained that she did not have a conversation with defendant and did not "hatch up" a plan to have him come in and take the money.

Additionally, Article 807 requires that a requested special charge be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly pertinent and correct.  We find that a charge on criminal conspiracy in the instant case would require explanation to the jury.  This extraneous qualification is expressly prohibited by La.C.Cr.P. art. 807.

Furthermore, defense counsel was allowed to fully argue to the jury in closing argument his theory of an "inside job."  Because he was able to present his theory of conspiracy to the jury, defendant has failed to show that he was prejudiced by the trial court's failure to give the requested special jury charge.

Based on the foregoing, we find that the trial judge's denial of defendant's request for special jury instruction was proper and did not violate defendant's right to present a defense.[8]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning reasons.[9]

The state first argues that this claim is procedurally barred based on the fact that defense counsel did not submit a written request for the proposed jury instruction in accordance with

---

[8] Ball, 131 So.3d at 900-02; State Rec., Vol. IV of IV.

[9] State ex rel. Ball v. State, 125 So.3d 450 (La. 2013) (No. 2013-KH-1329); State Rec., Vol. IV of IV.

Article 807.  Regarding the procedural bar doctrine, the United States Fifth Circuit Court of Appeals

has explained:

> A claim that a state has withheld a federal right from a person
> in its custody may not be reviewed by a federal court if the last state
> court to consider that claim expressly relied on a state ground for
> denial of relief that is both independent of the merits of the federal
> claim and an adequate basis for the court's decision.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001).

In the instant case, the Court has considerable doubt as to whether the procedural rule

invoked by the Louisiana Fifth Circuit Court of Appeal would be an "adequate" basis on which to

bar petitioner's claim.  A state procedural ground is not "adequate" to bar federal *habeas* review

"unless the procedural rule is strictly or regularly followed."  Johnson v. Mississippi, 486 U.S. 578,

587 (1988) (quotation marks omitted); see also Rocha v. Thaler, 619 F.3d 387, 400 n.36 (5th Cir.

2010) ("The 'adequacy' of a state ground ... turns on whether the state law ground is both firmly

established and regularly followed by the state courts." (quotation marks omitted)).

The problem here is that Louisiana's requirement that a request for a proposed jury

charge be in writing can tacitly be waived by the actions of the trial court and the prosecutor.  For

example, in State v. Miller, 338 So.2d 678 (La. 1976), the Louisiana Supreme Court refused to bar

review in such a circumstance, explaining:

> The requested instructions were not in writing as required by
> Article 807 of the Code of Criminal Procedure, and the entire charge
> of the trial judge is not in the record as required by the decisions of
> this Court holding that a complaint that the charge to the jury is
> deficient or improper cannot be considered by this Court unless the
> entire charge is made part of the record.  State v. Jack, 285 So.2d 204
> (La. 1973) and authorities there.  The trial judge has, however,
> acknowledged that the charge was in fact requested and that he

> refused to so instruct the jury.  In addition, the prosecutor makes no
> issue of the fact that the request was not in writing or that the entire
> charge of the trial judge is not contained in the record.  He, too, meets
> the issue in brief without reference to these deficiencies.  These
> circumstances, we believe, amount to a waiver of these technical
> requirements by the trial judge and the prosecutor and a recognition
> that the issue is squarely presented.

Id. at 681-82; accord State v. Haddad, 767 So.2d 682, 685-86 (La. 2000); State v. Franklin, 87 So.3d 860, 877 n.11 (La. App. 5th Cir. 2011) ("Although, there is no evidence that defendant submitted a written request for special instructions as required by LSA-C.Cr.P. art. 807, the trial court heard his argument and noted his objection.  In addition, the trial court also allowed the State's oral request for special instructions and subsequent objections.  Therefore, it appears that the trial court tacitly waived the formal writing requirement."), writ denied, 98 So.3d 811 (La. 2012); State v. Cho, 831 So.2d 433, 453 n.6 (La. App. 5th Cir. 2002) ("The Defendant did not submit a written request for the special jury instruction, as prescribed by the article.  However, when the trial judge has entertained numerous oral requests and objections by the Defendant, the trial judge has effectively dispensed with the requirement that special jury charges be in writing, and has tacitly agreed to consider such instructions as orally proposed.").

In the instant case, such a waiver arguably occurred.  After a charge conference was held off the record, the matter was briefly discussed on the record.  At that point, defense counsel stated:

> Your Honor, I would – as I stated in chambers, I would ask
> for a jury charge as it related to conspiracy and also as it relates to the
> concept of principal to a crime.  What the Court indicated in chambers

– I doubt its [sic] changed its mind – is that it would not include those
in these jury charges, and I would just object to that.[10]

The trial judge responded: "And your objection is noted for the record.  Thank you."[11]

Fortunately, however, a federal *habeas* court need not decide whether a claim is in fact procedurally barred if the underlying claim fails on the merits.  Glover v. Hargett, 56 F.3d 682, 684 (5th Cir. 1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir. 1992); Corzo v. Murphy, Civ. Action No. 07-7409, 2008 WL 3347394, at *1 n.5 (E.D. La. July 30, 2008); Rick v. Cain, Civ. Action No. 12-2617, 2014 WL 880494, at *3 n.7 (E.D. La. Mar. 5, 2014); Lee v. Cain, Civ. Action No. 06-9669, 2007 WL 2751210, at *9 (E.D. La. Sept. 18, 2007).  Here, as the state alternatively argues in its response in this proceeding, petitioner's claim clearly fails on the merits.  In light of that fact, the undersigned recommends that the claim simply be rejected on that basis for the following reasons.

As a preliminary matter, it must be remembered that federal *habeas corpus* relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice.  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983).  Accordingly, it is unnecessary for this Court to determine whether Louisiana law would have permitted – or even required – an instruction on the law of conspiracy under the facts of this case.

Rather, the only issue properly before the Court is whether the federal constitution required that the instruction be given.  Specifically, the issue here is whether the trial court's refusal to give the proffered jury instruction "so infected the trial with unfairness that the resulting conviction

---

[10]  State Rec., Vol. III of IV, transcript of September 8, 2011, p. 37.

[11]  Id.

- 14 -

was a denial of due process." <u>Merrell v. Workman</u>, 201 Fed. App'x 625, 628 (10th Cir. 2006); <u>accord</u> <u>Latimer v. Burt</u>, 98 Fed. App'x 427, 432-33 (6th Cir. 2004); <u>Davis v. Craig</u>, No. 94-50143, 1995 WL 534730, at *4 (5th Cir. July 25, 1995) ("[T]o prove constitutional error cognizable under § 2254, Davis must also demonstrate that the instruction rendered her trial fundamentally unfair in violation of the Due Process clause.  Finally, Davis' burden is even heavier in this case because she challenges the trial court's refusal to give a requested instruction, rather than any misstatement of the law." (citation omitted)).

In the instant case, the undersigned has no hesitation in concluding that petitioner's trial was not rendered fundamentally unfair by the trial court's refusal to give the proffered instruction.  At trial, defense counsel was permitted to vigorously cross-examine Rohrbacker regarding whether she conspired with petitioner to commit the crime.[12]  Despite obviously being aware that petitioner contended that the crime was an "inside job" committed with the cooperation of Rohrbacker, the jury nevertheless concluded that petitioner was guilty of first degree robbery beyond a reasonable doubt.  Petitioner does not argue that the jury instructions misstated the law in any respect, and there is simply no reason to believe that the failure to give an additional charge concerning conspiracy in any way affected the verdict, much less rendered his trial so unfair as to violate due process.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Michael Ball be **DISMISSED WITH PREJUDICE**.

---

[12]  <u>See</u> State Rec., Vol. III of IV, transcript of September 8, 2011, pp. 26-31.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[13]

New Orleans, Louisiana, this sixth day of August, 2014.



**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[13] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.